UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NELSON C. SCHERRER, individually and on behalf of others similarly-situated | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:17-cv-00855-JAR |
| FOREMOST INSURANCE COMPANY OF GRAND RAPIDS MICHIGAN | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Nelson C. Scherrer's Motion to Remand. (Doc. 13.) Defendant Foremost Insurance Company of Grand Rapids Michigan responded (Doc. 22), and Plaintiff replied (Doc. 27). Thereafter, the Court ordered limited discovery regarding jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), (5). (Doc. 28.) Defendant then filed a supplemental memorandum in opposition incorporating the data from discovery (Doc. 34), and Plaintiff filed a supplemental reply doing the same (Doc. 35).

1. **Background**

On January 10, 2017, Plaintiff filed his Petition for Declaratory and Class Action Relief in the Circuit Court of the City of St. Louis, Missouri (Doc. 4), alleging the following: In August 2016, a severe rainstorm caused water damage to the living room, bedrooms, closets, foyer, hallways, bathroom, and kitchen of his St. Louis home. The house was covered by an insurance policy issued by Defendant that indemnified Plaintiff for structural damage. Defendant confirmed that the damage was covered under the policy and sent an adjuster to inspect the

structure. The adjuster calculated a replacement cost value ("RCV") of $53,834 but reduced that amount to account for depreciation of materials and labor, resulting in an actual cash value ("ACV") of $47,838. Plaintiff received that amount less his deductible.

Plaintiff asserts that labor costs do not depreciate and that "depreciating labor costs is inconsistent with the universally accepted premise that the fundamental purpose of property insurance is to provide indemnity to policy holders." (*Id*. at 4.) On behalf of himself and the "thousands" of others whose ACVs were improperly reduced by labor cost depreciation, Plaintiff filed suit, seeking a declaratory judgment that such depreciation is contrary to the language of Defendant's policy and compensatory damages for Defendant's breach of contract. (*Id*. at 8.)

On March 8, 2017, Defendant removed the suit to federal court, asserting that CAFA's $5 million jurisdictional threshold was likely met based on calculations based on market share and an industry average for depreciated labor cost per claim, in addition to other costs, which yielded a total of $15,496,198 in controversy. (Doc. 1 at 6.) Plaintiff now moves to remand the case, arguing that Defendant's use of industry-wide averages and assumed numbers was unsupported by evidence and far too speculative to satisfy CAFA. (Doc. 14 at 2-3.) Instead, Plaintiff asserted, the greatest evidence-based amount in controversy was $4,196,887. (*Id*. at 11.) The Court ordered limited discovery on the jurisdictional issue. Thereafter, the parties filed supplemental briefing incorporating Defendant's actual claim data. For the reasons set forth below, the Court will deny Plaintiff's Motion to Remand.

2. **Discussion**

Under CAFA, federal district courts have jurisdiction over class actions when the class has more than 100 members, the parties are minimally diverse, and the "matter in controversy exceeds the sum or value of $5,000,000." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592

(2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)). Plaintiff does not dispute the size or diversity of the proposed class, but he argues that the amount in controversy is less than $5 million. (*See* Doc. 13.) "To 'determine whether the matter in controversy' exceeds that sum, 'the claims of the individual class members shall be aggregated.'" *Standard Fire*, 568 U.S. at 592 (quoting § 1332(d)(6)).

As the removing party, Defendant must establish the amount in controversy by a preponderance of the evidence; that is, it must show that the "fact finder *might* legally conclude that" the damages are greater than $5 million. *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789 (8th Cir. 2012) (quoting *Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009)). Defendant calculates the amount in controversy in three parts: compensatory damages; attorney's fees; and the value of declaratory judgment.

### (a) Compensatory Damages

During the class period, Defendant used two claims-adjustment software products: Xactware and Symbility. (Doc. 34-1 at 6-7.) Defendant asserts that there are 9,271 potential class members—8,135 policy holders whose RCV was reduced by labor depreciation and 1,136 who received no payment because their ACV was less than their deductible.[1] (*Id.*) Defendant provided the corresponding individual claim numbers to Xactware and Symbility, but the software providers returned depreciation figures for only 5,482. Without a complete record of depreciation for each claim, the parties cannot simply "add[] up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire*, 568 U.S. at 592. Instead, both parties compute compensatory damages by calculating an average per-claim amount of labor depreciation from

---

[1] Plaintiff accepts Defendant's class-size figures for purposes of remand. (Doc. 35 at 3, n.1.)

the 5,482 recorded claims and then multiply that average by the 9,217 class members. (Doc. 34 at 5-16; Doc. 35 at 2-11.) However, the parties draw different conclusions from the data, most notably different per-claim averages. In addition, Defendant argues that an amount must be added to account for later-joined class members, while Plaintiff argues that an amount must be subtracted to account for duplication of claims and for amounts already paid to claimants.

### i. Defendant's Computation

The 5,482 claims recorded on the Xactware and Symbility spreadsheets total $3,514,930.30 in depreciated labor cost—a per-claim average of $607.59. (*Id*. at 7-8.) Multiplying that average by the 9,271 qualifying claims yields a total of $5,633,002.39 in damages. (*Id*. at 8.) Thus, Defendant concludes, the jurisdictional amount is met.

Defendant also argues that $358,478.10 must be added to account for additional class members that might join before trial because the proposed class definition includes policyholders whose ACV was reduced by labor depreciation "during the time period from January XX, 2007 to the date of trial, inclusive." (*Id*. at 9 (quoting Doc. 4 at ¶ 40).)[2] To determine that additional amount, Defendant multiplied the number of current Missouri policyholders by its 55.03% yearly retention rate, its 5.6% yearly claim rate, and the Court's 26.7-month median time to trial. (*Id*. at 11-12.) Ultimately, Defendant asserts that Plaintiff seeks a total of **$5,902,100.69** in compensatory damages. (*Id*. at 13.)

---

[2] Defendant concedes that the jurisdictional amount of a case is determined at the time of removal but cites case law suggesting that future damages can be included when the Plaintiff's class definition expressly contemplates them. (*Id*. at 9-10 (citing *Whisenant v. Sheridan Prod. Co., LLC*, No. CIV-15-81-M, 2016 WL 5338557, at *6 (W.D. Okla. Sept. 23, 2016))); *see also Fenlon v. Burch*, No. 4:15-CV-00185 JCH, 2015 WL 928558, at *3 (E.D. Mo. Mar. 4, 2015) (citing with approval cases that "calculated the [jurisdictional] amount through a hypothetical trial date").

4

The Court holds that a fact finder might legally conclude, based on Defendant's calculations, that the compensatory damages are greater than $5 million based on Defendant's calculations. *Hargis*, 674 F.3d at 789. The Court hastens to note the highly speculative nature of Defendant's retention-rate-based assumptions, but reiterates that Defendant need only show that a fact-finder might accept its calculations, and the Court finds that those calculations are reasonable and based on fact. Moreover, the Court concludes that Defendant's computations are sufficient to meet CAFA's jurisdictional threshold even without including ongoing or future damages.

### ii.     Plaintiffs' Computation

"Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Hargis*, 674 F.3d at 790. Plaintiff asserts that Defendant's method should be more precise. To that end, rather than calculating a single average depreciation amount across all claims, he calculates four: one each for paid and non-paid claims from both the Xactimate and Symbility spreadsheets.[3] (Doc. 35 at 3-11.) Using those averages, Plaintiff posits an aggregate amount of only $4,889,700.10 in depreciation.

---

[3] (Doc. 35 at 10-11.)

| Claim Type | Number of Claims | Average Depreciation | Total |
|---|---|---|---|
| Xactimate, paid | 4,456 | $377.19 | $1,680,758.64 |
| Xactimate, non-paid | 623 | $178.24 | $111,043.52 |
| Symbility, paid | 3,679 | $815.48 | $3,000,150.92 |
| Symbility, non-paid | 513 | $190.54 | $97,747.02 |
| *Total* | *9,271* | - | *$4,889,700* |

5

Moreover, Plaintiff asserts that 15% of the claims listed on the Xactimate spreadsheet are duplicates that must be subtracted from the total. (*Id*. at 5-6.)[4] In addition, Plaintiff extrapolates from the data that 31.3% of withheld labor depreciation is ultimately paid to claimants. (*Id*. at 7-10.) Because Plaintiff does not seek to recover these late-but-ultimately-paid amounts, he subtracts them as well. (Doc. 4 at ¶ 40.) After figuring in both reductions, Plaintiff calculates a total of **$3,251,373.23** in compensatory damages.

Although the Court notes that Plaintiff's calculations are more specific and therefore may better approximate "the value of the claim of each person who falls within the definition of [the] proposed class," *Standard Fire*, 568 U.S. at 592, the Eighth Circuit has permitted computational methods even more general than Defendant's. In *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 945 (8th Cir. 2012), the Circuit Court allowed the plaintiff to use as a class-wide average the amount he was overcharged based on only two interactions with the defendant. Because the complaint alleged that the named plaintiff's claim was "*typical* of[] the claims of each other class member in that they are based on *identical* relationship with [defendant] and *identical* conduct of [defendant] *in each transaction*," the court allowed the defendant to simply multiply the average of his own claims by the total number of potential class members. *Id*. Thus, the Court cannot say that Plaintiff has established to a legal certainty that the CAFA claim is for less than $5 million. Accordingly, the Court will deny Plaintiff's Motion to Remand.

### (b)  Attorney's Fees and Declaratory Judgment

Defendant further argues that the amount in controversy should be increased by as much as 40% to account for Plaintiff's request for attorney's fees and as much as 100% to account for the value of declaratory judgment. (Doc. 1 at 6-7.) Plaintiff responds that attorney's fees should

---

[4] Plaintiff calculated this duplication rate based on finding 113 duplicate claims in a randomly

not be included and that, in any event, those fees would be paid by the class members such that they would not increase the amount in controversy. (Doc. 27 at 1-5.) Likewise, Plaintiff argues that compensatory damages already account for the value of declaratory judgment. (*Id*. at 5-8.) Because the Court has concluded that Defendant has met the jurisdictional amount based solely on compensatory damages, it need not decide whether and to what extent attorney's fees or declaratory judgment affect the amount in controversy.

3. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Nelson C. Scherrer's Motion to Remand (Doc. 13) is **DENIED**.

_____
**JOHN A. ROSS
UNITED STATES DISTRICT JUDGE**

Dated this 27th day of March, 2018.

---

selected sample of 750 estimates.